## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TOYE GREENE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **WAL-MART STORES EAST, LP** | : | No. 16-6693 |

### MEMORANDUM

**DITTER, J.**                                                                                    **August 6, 2018**

Plaintiff, Toye Greene, contends that she slipped and fell in Defendant's store as a result of a dangerous condition of which the store had both actual and constructive notice. For the reasons that follow, I will grant Defendant's motion for summary judgement.

## I.    FACTS

In the evening of December 8, 2015, Plaintiff was a shopper in the Wal-Mart store at 1000 Easton Road, Wyncote, Pennsylvania. She came out of a side aisle and turned, intending to go up the main aisle. However, as she took a step in the main aisle she slipped on a substance and fell.

The events in question are shown by a video and 13 timed photos from the video that was taken by one the store's surveillance cameras. The first picture, taken at 7:30.18 p.m., shows that the aisle where Plaintiff fell was clear and clean. Then another shopper and a little girl appear and make their way up the aisle passing the side aisle and then out of view. A picture taken at 7:30.59 p.m. shows that in the area where they had walked there is a dark spot. At 7:35.18 p.m., the camera recorded a figure, now identified as Ms

Greene, coming from the side aisle, turning to come down the main aisle, and slipping and falling in the dark area left by the previous shopper and the child.

Ms. Greene testified that vomit had caused her fall.

The surveillance pictures show that from the time the dark spot appears until Ms. Greene fell, four minutes and nineteen seconds elapsed. During that interim no other person is seen in the aisle. Both parties accept the accuracy of the film and what it shows including the time from spot to fall.[1]

Zane Glover, an assistant store manager, was on duty the evening of December 8, 2015. He testified that it is store policy to have employees constantly check for spills, paper, food, debris, or merchandise, anything that needs to be picked up that could cause a slip, trip, or some type of hazard and if any is found, to stay there until the condition is remedied.

Below Mr. Glover in the chain of command was a customer service manager or CSM. It was the duty of the CSM to check the entire store for safety purposes at least once each hour. Finally, there were floor associates who were assigned an area to service and a secondary area to also service and care for.

Mr. Glover also testified that 95 percent of the time the person who causes a spill or someone else will report it to a store employee within two minutes and that in about a minute, an employee will be at the site to prevent an accident.

---

[1] The parties agree that the elapsed time was four minutes, thirteen seconds. I conclude it was four minutes, nineteen seconds.

The store camera recorded that an hour before, at 6:34 p.m., another Wal-Mart employee, carrying a dust pan and broom, was in the area for approximately one minute.

## II.  STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party.  If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  An issue is genuine only if the proferred evidence is such that a reasonable jury could return a verdict for the non-moving party.

The non-moving party cannot rely on possibilities, likelihoods, conclusions, or reasons unsupported by facts to defeat a summary judgment motion.  Here, Ms. Greene must show affirmative evidence in order to defeat Defendant's motion.   See *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992); *see also Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir. 1992).

## III.  DISCUSSION

Wal-Mart recognizes that it has to take due care to make its store safe for shoppers. That includes the duty to guard against or eliminate hazardous conditions it created or of which it had actual or constructive notice.  Plaintiff contends that the facts show Wal-Mart had both.  Defendant contends the facts show it had neither.

### A.    There Was No Actual Notice

To establish that there was actual notice, Plaintiff points to the testimony of Zane

Glover that ninety-five percent of the time, someone from Wal-Mart is notified of a spill within two minutes by either the person who spilled something on the floor or someone who sees it. Plaintiff goes on, "It is therefore reasonable to conclude, with 95 percent certainty, that either the person who caused the 'condition' or some other person notified Wal-Mart of the hazard that caused Plaintiff's fall."

A conclusion, however reasonable, is not a fact[2] and at the summary judgment stage I am only permitted to deal with facts. Nonetheless, I shall consider Plaintiff's contention, i.e., the unknown shopper reported the substance. The surveillance photos eliminate the possibility that someone else could have seen it.

If, as Plaintiff contends, it is reasonable to conclude with a ninety-five percent certainty that the spill was reported, it is equally reasonable to conclude with a ninety-five percent certainty that the report was made to a Wal-Mart within two minutes of the occurrence and that within the next minute a Wal-Mart employee would have arrived at the hazardous spot. But no Wal-Mart employee ever showed up. Thus, accepting Plaintiff's contention and following it logically, the failure of a store employee to arrive at the scene permits only one conclusion, i.e., the unknown shopper did not report the spill to a Wal-Mart employee.

Since Plaintiff failed to point to any fact showing that Wal-Mart had actual notice of the condition that caused her fall and her reasonable conclusion argument leads to the

---

[2] Of course a jury may find a fact by the process of reasoning from a conclusion.

same result, I conclude there was no actual notice.

**B.    There Was No Constructive Notice**

Constructive notice requires proof that a hazardous condition was in place and had been present long enough that in the exercise of due care, the property owner would have known of its presence.  The critical question here is whether four minutes, nineteen seconds, the time from spot to fall, was long enough that if it had exercised reasonable care, Wal-Mart would have known of the condition.

To establish that there was constructive notice, Plaintiff again turns to the testimony of Zane Glover and the store's surveillance photos.  According to Mr. Glover, it was Wal-Mart policy for its employees to police the aisles constantly and for the customer service manager to check the entire store at least once each hour.  The surveillance video shows that at 6:34 p.m. one of the store's maintenance staff, identified by Glover as a woman named Jenez, walked through the aisle putting things back on the shelf and making the aisle tidy.  Between 6:34 p.m. and 7:30.18 p.m., the aisle is shown to be clean and clear and no one else appears.  At 7:30.39 p.m. the unknown shopper is shown.  She walks up the aisle, followed by the little girl (7:31.05 p.m.) and apparently turned into a far, side aisle because at 7:35.02 p.m., she is gone.  During Glover's deposition, he was shown the complete video that established that a spill had occurred at 7:31 p.m.  In one of the pictures, Plaintiff is seen coming out of the side aisle at 7:35.17 p.m. while the next shot show she begins to slip a second later, 7:35.18 p.m..

Constructive notice requires proof that the hazard had been in the aisle long enough, 7:31 to 7:35.16, that if it had exercised due care, Wal-Mart would have known of its presence and would have provided a warning or a remedy. The store video shows that after Jenez left and until the unknown shopper and little girl appear, the aisle was unused and was clean.

There was nothing to suggest that Wal-Mart should have had knowledge of the spill before Ms. Greene fell. The aisle was one of several in the store and was intended to be used by shoppers. There was nothing unusual about the merchandise on display. Prior to Ms. Greene's fall, it was a routine night. It follows that there was nothing to show that Wal-Mart's attention should have been directed to this particular place at this particular time. Nothing.

To establish the absence of due care, Plaintiff contends that if Wal-Mart had followed its hourly-inspection policy, a store employee would have walked through the aisle at 7:34 p.m., that is, an hour after Jenez tidied up the aisle at 6:34 p.m.. Had there been such a walk-through, the employee would have arrived in time to prevent Plaintiff's fall. Therefore, Plaintiff contends ". . . Defendant can be charged with constructive notice as there was enough time that Defendant would have discovered the 'condition' had its employees followed its policy."

There are several flaws in this argument.

First, it depends upon split-second timing and permits no variance of the time from

Jenez's appearance, 6:34 p.m., to a warning window, 7:31 p.m. to 7:35.17 p.m. Thus, if the CMS (identified as Hector) had walked the aisle at 7:30 p.m. there would have been no spill to see and he would have been within an hour from when Jenez tidied up the aisle at 6:34 p.m. Admittedly there was no such walk-through, but the point is that it would have been the sheerest coincidence for the CMS to have been at the right spot at the right time.

Something more than a coincidence is required to prove the absence of due care.

Second, no case has ever held that five minutes, much less four minutes and nineteen seconds, is enough time to provide notice of a dangerous condition. To require a retail store to check its entire premises every five minutes and eliminate every hazard would be unreasonable.

Third, a retail store's self-imposed policy is not the same as a legal duty nor does a failure to follow that policy create a breach of a legal duty. *Hudson v. Wal-Mart Stores East, L.P.,* 2007 WL 2107466 (E.D. Va. 2007); *Hower v. Wal-Mart Stores, Inc.,* 2009 WL 1688474 (E.D. Pa. 2009); *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536 (5th Cir. 2005).

In summary, I find that Plaintiff has failed to prove that Wal-Mart had constructive notice of the hazardous condition for these reasons: a legal duty is not established by a coincidence, to require a retail store to inspect its premises almost constantly would be unreasonable, and a company's failure to follow its own, self-imposed policy does not create a legal duty.

Since Wal-Mart had neither actual nor constructive notice of the hazard that caused Ms. Greene fall, I will grant Defendant's motion for summary judgment in the order that follows.